Jackson, Sp. J.,
delivered the opinion of the court:
The plaintiffs in error, in December, 1871, brought the present suit in the first circuit court of Shelby county, against the city of Memphis,'for the recovery of damages for its failure to complete and'perfect a contract alleged to have been agreed upon between the city and the plaintiff, Kirk, and others, composing an association styled the “People’s Passenger Railroad Company,” in the fall of 1859, for the construction and operation of street railways by horse power on certain streets of the city. To the plaintiff’s declaration, which set forth in detail the ordinances of the city upon the subject, the various resolutions of the city council, the propositions made and accepted, etc., the defendant demurred, assigning the grounds of demurrer, all of which were disallowed and overruled by the court below, except the second, third, fourth, thirteenth, and fourteenth assignments, which were sustained, and, the plaintiffs declining to amend, their suit was dismissed, and they appealed in error to this court. This appeal brings up for our consideration only these causes of demurrer that were sustained by the court below, and on which its judgment of dismissal was predicated; hence, we need not notice those grounds of demurrer which were • disallowed and overruled, nor express any opinion as to the correctness of the court’s ruling thereon.
It áppears from the averments of the declaration that the city of Memphis, having by ordinances of its council, or board of mayor and aldermen, provided for the establishment of a system of street railways by horse power, upon certain designated streets, proposed and undertook to let out or grant the exclusive right or privilege of constructing and operating such street railways for the *196 period of twenty-five years, with the right to charge fare thereon, to the party or parties who would contract for the same upon terms the most advantageous and acceptable for the city. That bids were accordingly submitted. That of the various propositions made, that submitted by PL D. Small, William Kirk, and others, composing a private company, or association, was considered the most favorable for the city. That the city council, after the reception •of this bid, by resolution bearing date December 2, 1859, submitted to said parties certain terms or propositions as the basis of a contract between them and the city, which the said H. D. Small, Joseph Bruce, and others, composing “The People’s Passenger Railroad Company, of Memphis,” by written communication of the same date, accepted; that at the same meeting of the board of mayor and aider-men, a resolution was passed, giving the permission of the board “to the parties to whom has been awarded the contract for city railroads, under the ordinance passed on the - day of -, 1859, to have themselves incorporated by the legislature of Tennessee, said incorporation in no way to change the conditions of the propositions heretofore made and accepted by the parties, respectively; the same being intended to secure the rights and the.more effectually to preserve the remedies of parties against each other, respectively, in case of any violation of contract to be hereafter entered into; provided, however, that said act of incorporation shall require the consent of the city of Memphis.” That the said Small, Kirk, and others, composing said joint stock association, called the “People’s Passenger Railroad Company, of Memphis,” accepted the terms of said resolution, and thereafter, in January or Bebruary, 1860, procured themselves to be incorporated by the legislature of the State of Tennessee, under the same name and style used by said private association; that, having duly organized under said charter or act of incorporation, the city, in February, 1860, was notified of *197 the fact, and. of said corporation’s readiness to execute and perform the contract and agreements previously entered into; that the hoard of mayor and aldermen, although recognizing the existence of said corporation, refused to complete and execute said contract with -it as to Main street, and on the 22d of March, 1860, passed a resolution ‘‘that this hoard recedes from its undertaking to have a street railway on Main street, because of the great opposition of the property holders on said street thereto; that this hoard recognizes the moral (hut not the legal) obligation to make good to those who have been incorporated as a street railway company, any real damages by.change of purpose, either by a reduction of the bonus should any other street be selected instead of Main street, or, if they choose to abandon the undertaking entirely, then by making proper compensation by way of damages, if any; and that for this purpose the wholé matter be referred back to the special committee, to modify the plan for street railways with the company, if it can be effected, or otherwise agree upon a settlement of the supposed damages, and report back to this board.” It is then averred that the city, notwithstanding its promises and agreements made and entered into with said Small, Kirk, and others, for and on behalf of said corporation, when it should be brought into existence by the legislature, that it would execute and perform the contracts previously made and accepted, and' consent that said corporation should operate street railroads on the streets named in said agreement upon the terms of the proposition agreed on, yet the board of mayor and aldermen had refused to execute and perform said contracts and agreements, although plaintiff was ready and willing at all times, and offered to perform on its part all the stipulations of the agreement; that by reason of said refusal on the part of the city the plaintiff’s franchise was destroyed; that by its refusal to give its consent for the plant-iffs tO' operate street railroads on the terms agreed on, *198 and by other acts on tbe part of tbe city, the plaintiffs had wholly lost' their franchise, and exclusive privilege of operating street railroads on said streets, to their damage, $500,000.
By the fourth section of the act incorporating the "People’s Passenger Railroad Company, of Memphis,” it had authority to operate street railways, by animal power, on all the streets of Memphis, “with the consent of the said city.” It was conclusively settled by the supreme court of this state, and of the United States, in the cases of Memphis City R. Co. v. Mayor, etc., 4 Cold., 406, 413, 416, and People’s Passenger R. Co. v. Memphis City R. Co., 10 Wall., 38-55, that the said corporation, the “People’s Passenger Railroad Co., of Memphis,” never procured or obtained the city’s consent to its use of any of the streets for the purpose of operating street railways thereon, as provided by the fourth section of the act of incorporation, and by the resolution of the board of mayor and aldermen, when permission was given for Small and his associates to procure said act. Nor is it averred in the declaration that any such consent was ever given by the city to said corporation. The wrongful withholding of this assent is one of the injuries complained of. The legal effect of the city’s withholding or refusing its assent to said corporation’s use and occupation of the streets, was to render the grant conferred by the act of incorporation inoperative and useless to the individual promoters. Thus, in 2 Red-field on thp Law of Ralways, p. 5132, it is said that “when a city passenger railway was incorporated by the legislature, upon condition that the consent of the city council to use and occupy the streets should be obtained before the company should construct their track, and the city council declined to allow the streets to be so used, the/ grant thereby became inoperative.”
The defendant’s fourth ground of demurrer relied upon the city’s refusal to give its consent to the' use and occupa- *199 lion of its streets for street railway purposes by said corporation, the People’s Passenger Railroad Company, and tliis demurrer was properly sustained by tlie court below, as to said corporation, which had no cause of action against the city for withholding such assent, although it may have been done without cause. “The People’s Passenger Railroad Company,” as a corporation, having no right of action against the city for refusing its consent to said corporation’s use of the streets, nor for the city’s failure to- carry out its agreement and contract with Small and his associates, the court below erred in sustaining defendant’s second ground of demurrer as to the party or parties entitled to sue, and, in requiring the plaintiff to so amend as to show that their suit was prosecuted alone in the name of said corporation, “The People’s Passenger Railroad Company, of Memphis;” for, in our opinion, whatever right or cause of action exists against the city for its failure to enter into a contract with said corporation according to the terms and stipulations made and entered into with Small and his associates, or for withholding its assent to said corporation’s use of the streets upon said terms, belongs exclusively to said Small and others, as individual members of a joint stock company or association, with whom alone the city has contracted, according to the averments of the declaration.
The thirteenth cause of demurrer, which set up that the declaration did not show that the plaintiffs, or any of them, had been damaged or injured as a necessary result of the matter stated, need not be'specifically considered, in the view we take of the case. The declaration sufficiently avers the breach on the part of the city of its agreement with Small and his associates, and damage resulting therefrom, if said agreements are legally binding upon the city. This brings us to the consideration of the two remaining grounds of demurrer which the court sustained, and on which its judgment dismissing plaintiffs’ suit was *200 founded. They present substantially the same defense to tire plaintiffs’ right of action.
13y the fourteenth assignment, it is said that “the defendant is not shown by the matters stated in the declaration to be under any legal liability to the plaintiffs, or any of them,” while the third demurrer sets up that “the late board of mayor and aldermen had no right, by law, to enter into an agreement by which it undertook to grant to the plaintiffs the right to construct and maintain railroads for the transportation of passengers through the streets of the -city, exclusively, or otherwise, for the period of twenty-five-years, or any period, as the declaration alleges was attempted in this instance.” Having already determined 'that the corporation, the People’s Passenger .Railroad Company, has no cause of action against the city, the causes of demurrer present for our determination the question as to the city’s power,, in the absence of legislative sanction or authority, to enter into a binding contract with individuals.or a private association for the construction and exclusive use and operation of street railways-on or over the streets of a city for private profit. In support of this power on the part of the city, plaintiffs’ counsed cite the case of Brown v. Duplessis, 14 La. Ann., 854, where the city of New Orleans granted the right of way in its streets to private individuals for a specific time, for the purpose of laying rails and running horse-cars over them, according to a tariff to be fixed by the common council. But it is shown in Dillon on Municipal Corporations (volume 2, sec. 569), wdiere this case is referred to, that the city of New Orleans derived its authority to confer such grant from a law of the state in relation to public improvements, which provided “that no railroad should be constructed through the streets of any incorporated city or town without the consent of the municipal council thereof.” In Redfield on the Law of Railways (volume 1, p. 324), where this 14 La. Ann. case is cited, it is said, in *201 explanation of tbe decision, that “by statute in this state (La.) the cities may sell the use of the streets for city passenger railway purposes.” This case cannot, under such circumstances, be held an authority for plaintiffs’ proposition; nor does the citation from sec. 575 of 2 Dillon on Municipal Corporations, support the position, for the author, after thus stating that the ordinary powers of municipal corporations are usually ample enough to authorize them to permit or refuse to permit the use of their streets for such purposes, adds this vital qualification: “But they cannot, by an implied power, confer corporate franchises or authorize the taking of tolls. This must come from the legislature.” And by reference to secs. 566 and 567 of the same work, where the direct question is particularly discussed, it will be seen that the author’s opinion is against the power of the city here contended for. He says: “The judgment of the court in the case just mentioned rests upon the sound principle that the powers of a corporation in respect to the control of its streets are held in trust for the public benefit, and cannot be surrendered or delegated by contract to private parties; and hence the resolution of the council authorizing private persons to' construct and operate a railroad upon certain terms, without, power of revocation, was not a license or. act of legislature, but a contract, void, however, Because, if valid, it would deprive the corporation of the control and regulation of its streets.” And, after quoting the langage of Comstock, J., in the New York case referred to (Davis v. Mayor, etc., 14 N. Y., 506), to the effect that such an ordinance would be an abrogation by the common council of their powers and duties over and concerning the public streets, and a surrender of a considerable portion of these powers and duties into the hands of private individuals, which the corporation could not fio, and that the ordinance was therefore void, the author announces that “this view was subsequently approved by the same court, and is unquestionably sound.”
*202 In Redfield on Railways (volume 1, p. 330), it is said that “the view at first attempted to be maintained as to street railways [was] that the cities and towns might create them by special grants to individuals or companies. But this view has long since been abandoned, and it is now entirely well settled that such a franchise in the highways can only be created by legislation. It is a franchise to carry passengers and to demand tolls. This is one of the prerogatives of sovereignty, and only derivable through the action of the legislature.”
In Cooley’s Constitutional Limitations, p. 545, it is said on this subject that “the municipal organizations in the state have no power to give such consent [to the use and occupation of their streets by railways] without express legislative' permission; the general control of their streets, which is commonly given by municipal charters not being sufficient authority for this purpose.” At page 201 of the same work, it is said: “So, a corporation, having power under the charter to establish and regulate streets, cannot, under this authority, without explicit legislative consent, permit individuals to lay down a railway in one of its streets, and confer privileges exclusive in their character.” The case of Milhau v. Sharp, 21 N. Y., 611, is. then cited as announcing the correct principle on the subject, in holding that, while municipal corporations have the exclusive right to control and regulate the use of their streets without limitation as to the exercise of this authority so long as it is within the objects and trusts for ivhich the power is conferred, am ordinance conferring upon individuals the right to use its streets for railway purposes could not be supported. The court then says: “Though it relates to a street, and very materially affects the mode in which that street is to be used, yet, in its essential features, it is a contract. Privileges exclusive in their nature are conferred. Instead of regulating the use of the streets, the use itself, to the extent specified in the resolution, is *203 granted to tbe associates. For wbat lias been deemed au. adequate consideration, tbe corporation bas assumed to surrender a portion of tbeir municipal authority, and bas, in legal effect, agreed witb tbe defendants tbat, so far as tbey have occasion to use tbe street for tbe purpose of constructing and operating tbeir railroad, tbe right to regulate and control-tbe use of tbat street shall not be. exercised. It cannot be tbat powers vested in tbe corporation as an important public trust can thus be frittered away or parceled out to individuals or joint stock associations, and secured to them beyond control.”
In the case of Reg. v. Train, 9 Cox Crim. Cas., 180, cited in 2 Redfield on Law of Railways, tbe question of laying rails upon the public streets for tbe transportation of passengers by permission of tbe municipal authorities without legislative grant, was fullly discussed by tbe court of queen’s bench, and it was there decided “tbat tbe laying-down of a railway in a public street by permission of tbe municipal authorities, causing an obstruction to travel, and without legislative authority, was a public nuisance, and could not be justified or excused by proof tbat tbe railway was extensively used, and tbat it afforded a cheaper and easier mode of traveling than bv ordinary conveyances. Nor could such railway be considered a species of pavement which tbe city could lawfully lay down.”
¥e can add nothing to tbe force of tbe reasoning announced in the foregoing authorities. In our opinion, tbey lay down sounder principles in reference to tbe powers of municipal corporations than those stated in tbe 14 La. Ann. case, above referred to, and tbey conclusively establish tbat tbe city of Memphis bad no power to make tbe contract or agreement witb Small and his associates, constituting tbe foundation of tbe present action. See, also, 10 Wall., 38-55, 4 Cold., 406-416. It follows tbat tbe judgment of tbe circuit court must be affirmed, witb costs.